IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VALERIE M LINDSEY**, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:10-CV-967-L** |
| **OCWEN LOAN SERVICING, LLC,** d/b/a Ocwen Federal Bank, FSB, and **LASALLE BANK NATIONAL ASSOCIATION,** As Trustee for the Registered Holders of the Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC10, | § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Plaintiff's First Amended Motion for Leave to Amend, filed May 31, 2011, and (2) Defendants' Motion for Final Summary Judgment, filed December 3, 2010. After carefully reviewing the motions, briefs, appendices, responses, reply, record, and applicable law, the court (1) **denies** Plaintiff's First Amended Motion for Leave to Amend, and (2) **grants** Defendants' Motion for Final Summary Judgment.

I.  **Factual and Procedural Background**

Valerie M. Lindsey ("Plaintiff") originally filed this action against Ocwen Loan Servicing, LLC ("Ocwen") and LaSalle Bank National Association ("LaSalle") (collectively, "Defendants") in the 192nd Judicial District Court of Dallas County, Texas, on January 20, 2010. Defendants were served on April 13, 2010, and they removed the case to this court on May 13, 2010, because

complete diversity of citizenship existed between the parties and the total amount in controversy exceeded $75,000, exclusive of interest and costs.

This case arises out of a foreclosure sale on Plaintiff's residence. Plaintiff originally executed a deed of trust on June 30, 2003, to secure payment on a promissory note for the purchase of her residence. Finance America, LLC was the original lender on the promissory note, which it subsequently transferred to LaSalle on June 30, 2008. Ocwen became the mortgage servicer for LaSalle. Plaintiff shortly thereafter fell behind on her loan payments due to the economic recession and ended up in default. On August 8, 2009, Defendants mailed Plaintiff a notice of default and, on October 27, 2009, Defendants sent her a notice of acceleration of loan maturity and a notice of foreclosure sale. Plaintiff contends that she never received these notices. On December 1, 2009, Ocwen administered the foreclosure sale, and LaSalle purchased the residence and received a foreclosure sale deed to the property. On January 13, 2010, LaSalle filed a petition for forcible entry and detainer against Plaintiff in state court.

Plaintiff brings a single claim of wrongful foreclosure against Defendants. Specifically, she contends that Ocwen failed to give contractually required notices and that LaSalle's claim to title is invalid and unenforceable. She requests declaratory relief and asks the court to set aside the foreclosure sale and quiet title. Alternatively, she requests an opportunity to cure the default within the required statutory time period. She also makes a request for attorney's fees.

Defendants now move for summary judgment on Plaintiff's wrongful foreclosure claim. In response, Plaintiff has made an untimely request for leave to amend her complaint to bring additional claims for unfair debt collection, breach of contract, and tortious interference with a contract. She contends that good cause exists for the court to allow such amendment.

## II. Legal Standards

### A. Good Cause for Amendment of Pleadings

Before the court can modify a scheduling order and grant leave to amend a pleading under Rule 15(a) of the Federal Rules of Civil Procedure, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id*. at 536. In deciding whether to allow an untimely amendment, a court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id*. (internal quotation marks, brackets, and citations omitted).

### B. Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary"

will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

Before it considers Defendants' motion for summary judgment, the court must first decide whether to grant Plaintiff's motion for leave to amend her complaint, which would allow her to include additional claims and defenses. This is a critical threshold decision because Plaintiff opposes Defendants' motion for summary judgment almost entirely on the basis of her newly asserted legal theories. Accordingly, the court first addresses Plaintiff's motion for leave to amend.

### A. Motion for Leave to Amend

The court's scheduling order set October 18, 2010, as the deadline for amendment of pleadings in this case. The parties made no requests for an extension of any deadline, and each party made no indication to the court that additional time might be required for any reason. After the deadline for amendment of pleadings had passed, Defendants timely filed their motion for summary judgment on December 3, 2010, by which they sought to dispose of Plaintiff's wrongful foreclosure claim. On December 27, 2010, Plaintiff filed her response to the summary judgment motion, and she also filed an amended complaint. She argued that Defendants' motion for summary judgment should be denied on two grounds: first, Defendants did not provide contractually required notices of foreclosure; and second, Defendants had not addressed the new theories of recovery raised in Plaintiff's amended complaint. The court ordered the clerk of the court to unfile Plaintiff's amended

complaint because it was filed more than two months after the expiration of the deadline for amendment of pleadings without leave of court.

Nearly two months later, on February 11, 2011, Plaintiff for the first time filed a motion requesting leave to amend her complaint. Her motion for leave to amend sought such relief solely under Rule 15(a)(2) and failed to even mention the controlling Rule 16(b)(4) good cause standard for modifying a scheduling order. In Defendants' response in opposition to Plaintiff's motion for leave to amend, Defendants noted the inadequacy of Plaintiff's motion, and they argued firmly that Plaintiff had wholly failed to meet the four-part test for good cause. Despite Defendants having highlighted a fatal deficiency in Plaintiff's motion for leave to amend, Plaintiff never filed a reply brief to address the good cause standard. Further, Plaintiff never even attempted to communicate with the court about demonstrating good cause until the court issued an order on May 18, 2011, denying Plaintiff's motion for leave to amend and ordering Plaintiff to file a new motion to comport with the Rule 16(b)(4) good cause standard. Plaintiff filed the instant motion for leave to amend on May 31, 2011, more than seven months after the expiration of the October 18, 2010 deadline for amendment of pleadings.

A court must "more carefully scrutinize a party's attempt to raise new theories . . . by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam). Granting leave to amend in such circumstances "is potentially to undermine the [non-amending party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint . . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending

its complaint." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting the court's opinion below), *aff'g*, 685 F. Supp. 968 (N.D. Tex. 1988) (Fitzwater, J.).

In support of her argument that good cause exists for failing to move timely for leave to amend, Plaintiff explains that she and her counsel were unfamiliar with the Homes Affordable Modification Program ("HAMP") and its applicability to Plaintiff's mortgage loan. She alleges that, when Defendants made their Rule 26 disclosures, they failed to provide Plaintiff with a specific document, which she has attached as an exhibit to her motion for leave to amend. The document, marked as Exhibit C, appears to be a standardized form sent by Ocwen to Plaintiff and conveys, "when we receive all of your documentation and verify your information, we will determine whether you qualify for [a HAMP modification] of your loan." Pl.'s Am. Mot. for Leave to Amend, Ex. C.

Plaintiff states that she now believes her mortgage loan was wrongfully refused under HAMP by Defendants, despite her qualifying for HAMP relief. She further contends that her counsel, because HAMP was a relatively new program, had to engage in numerous hours of research and extensive document review to understand fully the HAMP program and its applicability to Plaintiff's mortgage loan. Additionally, Plaintiff affirms that her counsel "could have prosecuted [this case] quicker and more efficiently" if her ability to pay counsel's legal fees had not diminished in September 2010. *Id.*, Ex. B ¶ 7. Her counsel further represents to the court that he "experienced delays in conducting the necessary work" due to Plaintiff's inability to pay. *Id.* at 6 ¶ 12.

In light of these contentions, the court does not believe that Plaintiff has provided an adequate explanation to show good cause for an untimely amendment; at least, she has not provided one that outweighs the prejudice Defendants would suffer if the amendment were allowed. First, the court rejects Plaintiff's argument that her inability to pay counsel's legal fees justified his delay

in effectively and efficiently prosecuting Plaintiff's case. An attorney's duty is to advocate zealously for his client. If a lack of funding from the client ever renders such advocacy impossible, which the court strongly doubts was the situation here, counsel has an obligation to apprise the court and either withdraw as counsel or request a continuance to all pertinent deadlines until funding is resolved. Mere inadvertence on the part of the movant's counsel is insufficient to constitute "good cause." *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Here, the court treats the nonpressing desire of Plaintiff's counsel to prosecute Plaintiff's case as inadvertence. When an attorney agrees to represent a client, counsel at times will assume the risk of nonpayment from the client. If such risk is ever too great for counsel to assume, counsel always enjoys the right to decline the case from the outset or ask to withdraw if his client cannot pay. When legal representation is retained, however, and the case proceeds before the court, counsel is never at liberty to cease his zealous advocacy whenever his client is delinquent on a payment, unless the court grants counsel such permission.

With respect to Plaintiff's argument concerning HAMP, the court is unpersuaded. The court does not believe that the document Plaintiff contends Defendants withheld from discovery establishes, by itself, a sufficient basis for Plaintiff's new legal theory that Defendants wrongfully refused her mortgage loan under HAMP. In any event, Plaintiff's new claims premised upon that legal theory would require additional discovery, as well as a significant extension to all deadlines. The court's amended scheduling order currently sets the completion of discovery deadline for July 1, 2011, and the trial date for September 19, 2011. This case has been pending in this court for over a year, and it makes little sense to add unnecessarily four to six more months to this litigation simply because this action has not been prosecuted with requisite diligence.

Moreover, that Plaintiff's first mention of an amended pleading came only in response to Defendants' motion for summary judgment – and that Plaintiff's response in opposition to that motion based a significant portion of its argument on Defendants not having addressed Plaintiff's newly added claims – makes the court skeptical of the genuineness of Plaintiff's proposed amendment.

In addition to extending discovery and all other deadlines, which would necessarily prolong this litigation, allowing amendment now would, in all likelihood, require Defendants to file a new motion for summary judgment, unduly ramping up litigation costs and expenditures, to dispose of Plaintiff's new claims. All the while, LaSalle would continue being unable to exercise its asserted property interest in Plaintiff's residence, which it purchased at the December 1, 2009 foreclosure sale, as this litigation persists. For these reasons, the court determines that Plaintiff's proposed amendment would unduly prejudice Defendants and questions whether such prejudice could be cured by a continuance.

As previously pointed out, Plaintiff has not shown diligence with respect to the prosecution of this case. On the one hand, perhaps a continuance could cure any prejudice to Defendants; however, "[d]istrict judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997). Moreover, the court determines that the posture of this case is one of Plaintiff's own making, and under such circumstances, a court has no obligation to grant extensions of pretrial deadlines. *Cf. Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2008). For all of the reasons previously stated, the court cannot countenance further

delay, absent good cause, which is lacking in this case. As good cause to modify the scheduling order has not been shown, Plaintiff's motion for leave to amend will be denied.

**B.  Motion for Summary Judgment**

Plaintiff's wrongful foreclosure claim against Defendants rests solely on the grounds that Defendants failed to provide her with contractually required notices of default, acceleration, and foreclosure. Defendants move for summary judgment on Plaintiff's wrongful foreclosure claim because they assert that they provided proper notices of foreclosure, contrary to Plaintiff's allegations. Defendants additionally seek summary judgment on Plaintiff's request for attorney's fees because the Federal Declaratory Judgment Act does not provide statutory authority to award attorney's fees.

With respect to Plaintiff's contention that required notices were not given, Defendants demonstrate that they provided Plaintiff with all notices required by statute under the Texas Property Code. *See* Defs.' Mot. Summ. J. 5-6; Defs.' App. 30-32, 34-37, 39, 43. Specifically, Defendants establish that they sent all required notices to Plaintiff's residence via certified mail, return receipt requested, on August 8, 2009, and on October 27, 2009. *See* Defs.' App. 30-32, 34-37. Plaintiff, in her response brief in opposition, stipulates that Defendants provided *statutorily* required notices, but argues that Defendants failed to provide *contractually* required notices. Pl.'s Resp. 5, 7.

Plaintiff contends that, under her loan agreement, Defendants were required to provide notices by first class mail. She suggests that the method by which Defendants used to provide the notices via certified mail, return receipt requested, was insufficient to meet the contractual terms. The court disagrees for two reasons. First, the court finds Plaintiff's attempt to elevate "first class

mail" above "certified mail" nonsensical. "Certified" or "registered" mail is in a category higher than "first class." Thus, Defendants have gone above what was legally required by the contract.

Second, even if the court were to draw a distinction and conclude that "certified mail" is improperly categorized as "first class mail," the plain language of Plaintiff's loan contract accounts for the possibility of statutory notice requirements differing from contractual notice requirements. The relevant provision of the contract reads:

> *Unless applicable law requires a different method*, any notice that must be given to [Plaintiff] under this [contract] will be given by delivering it or by mailing it by first class mail . . . .

Pl.'s App. 6 (emphasis added). As Defendants establish in their motion for summary judgment (and to which Plaintiff stipulates in her response brief), Defendants provided all required notices under applicable law – that is, under the Texas Property Code. Even if certified mail constitutes a "different method" from first class mail, which the court expressly holds does not, the contractual provision carves out an exception to the contractual notice requirements when applicable law requires a different method. It is clear from the record in this case that Defendants provided all notices to Plaintiff in accordance with the method required by the Texas Property Code. There is accordingly no genuine dispute of material fact with respect to Plaintiff's wrongful foreclosure claim; it is uncontroverted that Defendants provided Plaintiff with all required notices. Defendants are therefore entitled to judgment as a matter of law, and Plaintiff's wrongful foreclosure claim will be dismissed with prejudice.

With respect to Plaintiff's request for declaratory relief and attorney's fees, in light of the court's analysis above, such requests will be denied. As Plaintiff's underlying claim for wrongful

foreclosure will be dismissed, there is nothing remaining for the court to adjudicate in this proceeding, and Plaintiff is not entitled to any such relief.

IV. **Conclusion**

For the reasons stated herein, the court determines that no genuine dispute of material fact exists with respect to Plaintiff's wrongful foreclosure claim against Defendants. The court accordingly **grants** Defendants' Motion for Final Summary Judgment, and Plaintiff's wrongful foreclosure claim is **dismissed with prejudice**. Additionally, the court **denies** Plaintiff's requests for a declaratory judgment and attorney's fees.

The court further determines that Plaintiff has not demonstrated good cause to obtain leave to amend her complaint. Accordingly, the court **denies** Plaintiff's Motion for Leave to Amend. As no claims remain pending in this action, the court will enter a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 27th day of June, 2011.

Sam A. Lindsay
United States District Judge